**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

COURTNEY J. WILSON,                      )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )          No. 4:18-CV-1957 CAS
                                         )
JEFFERSON COUNTY, et al.,                )
                                         )
              Defendant.                 )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion to dismiss plaintiff's Third Amended
Complaint filed by defendant Jefferson County and defendants Oliver Boyer, Brock Bridges, and
Tenesa Cash in their individual capacities.[1]  Plaintiff Courtney J. Wilson opposes the motion and
it is fully briefed.  For the following reasons, the defendants' motion to dismiss plaintiff's federal
claims in Counts I, II, III, and IV will be granted.  The Court declines to exercise supplemental
jurisdiction over plaintiff's state law claims in Count V and VI and will dismiss those claims
without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## I. Background

Plaintiff Courtney J. Wilson brings this action pursuant to 42 U.S.C. § 1983 and Missouri
law to recover damages arising from events concerning her arrest, detention, and incarceration
after Jefferson County Sheriff's Office Deputy Brock Bridges responded to a domestic violence
call at her house.

---

[1]Previous versions of the complaint asserted claims against defendants Jefferson County Sheriff's
Department, Officer John Doe, Officer Jane Doe, and Jailer Jane Doe.  Plaintiff omitted these defendants
from the current Third Amended Complaint.

The Third Amended Complaint ("complaint") (Doc. 49) and the police report attached thereto and "*incorporated [t]herein as if fully referenced*" (Id. at 4, ¶ 16) (emphasis original) allege that on April 5, 2016, plaintiff returned to her home in Fenton, Missouri after having dinner with her mother and was physically assaulted by her then-husband, Charles DeGregorio, during a domestic dispute. Plaintiff sustained injuries in the assault including a concussion, bruising to her face and body, and a black eye. Plaintiff alleges her concussion, bruising, and black eye were visible. Despite plaintiff being the victim and having visible injuries, DeGregorio called 911 and claimed plaintiff attacked him and that she was intoxicated and belligerent.

Defendant Bridges responded to the 911 call and spoke with DeGregorio first. Bridges later drafted the police report attached to the complaint. The report states that DeGregorio told Bridges plaintiff came home intoxicated and states in pertinent part as follows:

Charles stated they had a verbal disagreement when she came home, based on taking out the trash. Charles stated they began to exchange harsh words and he decided he was going to leave the residence for the night. Charles stated after he made the statement based on leaving, Courtney began to push him. Charles stated he felt threatened due to her becoming physical. Charles stated he left the residence and went to Walmart. Charles stated when he was at Walmart, Courtney called him to discuss what happened. Charles stated he returned home with the intent to go to bed, but stated he went downstairs to talk to Courtney. Charles stated they began to exchange harsh words again. Charles stated Courtney began to follow him upstairs into their room, where he was beginning to gather clothes to leave for the night. Charles stated Courtney grabbed his bag as he was beginning to exit the room. Charles stated Courtney would not let go, as he pulled the bag with her holding on, into the hallway. Charles stated he went back into the bedroom to get his keys and Courtney tackled him onto the bed. Charles stated he held her down and began to verbally yell stop. Charles stated when he began to let go, Courtney grabbed his face and began to kick him in the chest. Charles stated he verbally yelled "Get off of me" multiple times, meaning for her to stop trying to hurt him. Charles stated when Courtney grabbed his face again, he hit her in her face with his elbow. Charles stated he continued to hold Courtney down until she stopped trying to hurt him.

I observed redness in both cheeks to Charles's face.

I made contact to Courtney, who was laying down on the bed in the bedroom. I observed the bedroom to be in disarray. I also observed Courtney to be in a confused state at the time and stating she wasn't feeling very good. Courtney stated around 1900-1930 hours, she went to dinner with her mother. Courtney stated at dinner, she

2

drank 2 glasses of wine. Courtney stated around 2000-2030 hours she arrived home and began to have a verbal argument with her husband. Courtney stated she didn't remember what the argument was about or what happened. Courtney stated she only recalls arguing, fighting in the bedroom, and Charles hitting her in the face.

I observed a bruising below Courtney's left eye.

Complaint, Ex. 1 (Doc. 49-1). DeGregorio voluntarily wrote a Domestic Violence Report containing his version of the events. Id.

The complaint alleges DeGregorio had no injuries to substantiate his claim that he was a victim of domestic violence, only redness in both cheeks as noted in the police report. Bridges did not administer a field sobriety test or make any other assessment of plaintiff's sobriety to substantiate DeGregorio's allegation that she was intoxicated but checked the "alcohol" box for plaintiff in the police report under "Conditions Observed." In addition, the Sheriff's Office Event Chronology log, which is incorporated by reference into the complaint, reflects that an officer notified the dispatcher that DeGregorio had hit plaintiff in the face. Despite these facts, Bridges arrested plaintiff for third-degree domestic assault, handcuffed her, and transported her to the Jefferson County Jail for a twelve-hour hold. Plaintiff alleges that by arresting her, Bridges violated her constitutional rights and Jefferson County Sheriff's Office custom and practice that calls for arresting both parties to a domestic violence incident or neither.

The complaint alleges that Bridges observed plaintiff's disorientation, confusion, and black eye, and the seriousness of her injuries should have been apparent to a trained peace officer. Plaintiff repeatedly requested medical assistance from Bridges during the half-hour trip from plaintiff's home to the jail, but Bridges did not transport her to a medical facility for treatment and obtain a release signed by competent medical authority as required by Sheriff's Office policy No. 100.126.2 (complaint, Ex. 3). In addition, Bridges improperly applied handcuffs to plaintiff's

wrists causing bruising and tissue damage and did not check the handcuffs for fit after placing them on her, resulting in further pain and bruising to plaintiff's wrists.

During booking and inmate intake processing at the Jefferson County jail, plaintiff repeatedly requested medical assistance from defendant corrections officer Tenesa Cash. Under Sheriff's Office policy No. 100.126.1 (complaint, Ex. 4), "[n]o prisoner shall be booked into the holding facility or otherwise held for interrogation or other purposes that has injuries or illnesses that require hospitalization or attention of a health care professional." (Id. § 4.a.) The arresting deputy or sworn supervisor is responsible for transporting the prisoner to a medical care facility before placing them in holdover or detention if it is unclear whether the prisoner is fit for confinement. (Id. § 4.b.) Defendant Cash was responsible for directing Bridges to obtain medical attention for plaintiff before booking and processing but she failed to do so.

During plaintiff's incarceration at the Jefferson County jail she was suffering from headaches, vertigo, nausea, and disorientation from the concussion caused by DeGregorio. No jail staff member called for the facility nurse or took other steps to provide plaintiff with medical assistance despite her repeated requests. Plaintiff repeatedly asked for medical care by using the in-cell intercom to request medical assistance from jail staff. After several attempts by plaintiff to use the in-cell intercom, defendant Cash responded to one of plaintiff's calls. Plaintiff requested medical attention and told Cash that "she may have a concussion" from DeGregorio hitting her. Cash responded, "Can you even afford to see a doctor?" and failed or refused to answer any more of plaintiff's intercom calls.

Plaintiff was released from the Jefferson County jail the next morning at approximately 11:00 a.m. and went to the St. Clare Health Center Emergency Department. Medical staff examined her and determined that plaintiff had suffered from an assault resulting in a concussion, facial contusions, and body contusions. After plaintiff was discharged from the Emergency

Room, she went to the Jefferson County Sheriff's Office to submit a statement relating to the alleged domestic assault complaint filed by DeGregorio, as Bridges did not take plaintiff's statement during the initial encounter. The Sheriff's Office advised plaintiff that because DeGregorio had filed a criminal complaint against her, she was ineligible to submit her own complaint or attach her own statement to the previously filed report.

Plaintiff alleges she lost her employment as a result of the unlawful arrest and, as a result of Bridges and Cash's failure to obtain medical care for her, she suffered long-term brain damage including post-concussion syndrome, post-traumatic stress disorder ("PTSD"), anxiety disorder, panic attacks, worsened major depressive disorder, increased trouble sleeping because of PTSD, short-term memory loss, and after the incident was diagnosed with bipolar disorder. Plaintiff also developed a crippling fear and mistrust of law enforcement as a result of the incident.

Plaintiff alleges that the Jefferson County Sheriff's Office under the leadership of defendant former Sheriff Oliver Boyer has a history and custom of wrongfully arresting victims of domestic violence, allowing perpetrator to walk free and causing criminal prosecution of battered women on behalf of their abusers, citing Paula Strahan v. Jefferson County, No. 4:97-cv-00307.

The complaint asserts 42 U.S.C. § 1983 claims against Bridges, Boyer, Cash, and Jefferson County. Count I asserts a Fourth and Fourteenth Amendment claim against Bridges for unreasonable seizure/arrest and use of excess force; Counts II and III assert Fourteenth Amendment claims against Bridges and Cash, respectively, for failure to obtain medical assistance; Count IV asserts a Monell municipal liability claim against Jefferson County for failure to train, discipline, and supervise its deputies and for a custom of conducting unreasonable seizures and using excessive force; Count V asserts a supplemental state law claim against Bridges for false arrest; and Count VI asserts a state law false imprisonment claim against all defendants.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., and "raise[s] a right to relief above the speculative level."  Twombly, 550 U.S. at 555.[2]  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555-56; Fed. R. Civ. P. 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however.  Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations.  Id.

While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, they may also consider exhibits and documents attached to a

---

[2]Plaintiff argues the motion to dismiss should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim entitling him or her to relief," Response at 3, citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  This assertion is meritless, as in Bell Atlantic Corp. v. Twombly, 554 U.S. 554 (2007), the Supreme Court overruled Conley and established a "plausibility standard for motions to dismiss."  Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc).  Plaintiff's citation to this long-outdated legal standard is careless at best.

complaint. See Brown v. Green Tree Servicing LLC, 820 F.3d 371, 373 (8th Cir. 2016); Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012). Here, the Court considers the complaint's exhibits, which plaintiff expressly incorporated into the complaint.

## III. Discussion

A. Count I – Unreasonable Seizure/Arrest – Defendant Bridges

1. *The Parties' Arguments*

Defendant Bridges moves to dismiss plaintiff's claims against him in Count I based on qualified immunity. Bridges argues that a reasonable police officer would have concluded probable cause existed to arrest plaintiff for third-degree domestic assault under § 565.074.1(1), Missouri Revised Statutes, under the totality of the circumstances. Under the statute, a person commits third-degree domestic assault if "[t]he person attempts to cause or recklessly causes physical injury to [a] family or household member . . . ." "Physical injury" in turn is defined as "physical pain, illness, or any impairment of physical condition . . . . " § 556.061(2), Mo. Rev. Stat. Bridges asserts that as long as the perpetrator attempts to cause physical pain of some kind to the victim, sufficient evidence exists to convict for third-degree domestic assault. Here, Bridges states that DeGregorio informed him plaintiff "grabbed his face and began to kick him in the chest" (Doc. 49-1 at 4) and that DeGregorio desired that plaintiff "stop trying to hurt him." (Id.) Bridges argues that by "trying to hurt" DeGregorio by kicking him, plaintiff attempted to cause DeGregorio physical pain, and thus comes within §565.074.1(1)'s definition of third-degree domestic assault.

Plaintiff responds that the motion to dismiss must be denied because Bridges fails to accept as true the facts as alleged in the complaint, and instead relies primarily on the police report which does not include plaintiff's statement. Plaintiff further responds that based on Bridges' own observations made in the police report, he found plaintiff in her bedroom, disoriented, confused,

and significantly bruised on her face. Plaintiff asserts that by Bridges' own account and description, she was suffering from a concussion as later confirmed by the St. Clare Health Center Emergency Department. Plaintiff argues no reasonable probable cause existed to arrest her–as opposed to DeGregorio, who admitted that he physically struck plaintiff–when she was in the condition Bridges observed and when she told Bridges "she only recalls arguing, fighting in the bedroom, and [DeGregorio] hitting her in the face."[3] Plaintiff contends that a reasonable officer would have easily determined plaintiff was the victim of domestic violence and DeGregorio the perpetrator in light of the visible bruising beneath plaintiff's eye, the lack of visible injuries on DeGregorio, and DeGregorio's admission that he hit plaintiff in the face.

Plaintiff argues Bridges is not entitled to qualified immunity because arresting plaintiff under the circumstances alleged in the complaint can only be described as incompetent, as Bridges relied only on statements made by DeGregorio in deciding to arrest plaintiff and disregarded the overwhelming physical evidence that to a reasonable police officer would indicate DeGregorio was the suspect, not plaintiff. Plaintiff asserts that Bridges failed to conduct a reasonable investigation before arresting her because he did not take her statement and consider all of the evidence, including her statement and DeGregorio's admission that DeGregorio struck her in the face.

Bridges replies that while plaintiff claims he improperly recites facts taken primarily from the police report to argue that probable cause existed for her arrest, the report is appropriately considered on the motion to dismiss because plaintiff attached it to her complaint as an exhibit and it is a part of the pleading for all purposes under Rule 10(c), Fed. R. Civ. P. Bridges contends that plaintiff does not dispute the report's accuracy as to oral statements she gave to him, and there is

---

[3]The Court notes plaintiff cites to the police report attached to her complaint as the source of the statement she made to Bridges.

no contradiction between plaintiff's statement in her response memorandum that she told Bridges "she only recalls arguing, fighting in the bedroom, and [DeGregorio] hitting her in the face" and the report's statement that Wilson said prior to the incident "she arrived home and began to have a verbal argument with her husband. [Plaintiff] stated she didn't remember what the argument was about or what happened. [Plaintiff] stated she only recalls arguing, fighting in the bedroom, and [DeGregorio] hitting her in the face." Bridges asserts that none of this is inconsistent with what the report states DeGregorio told him – that Wilson attacked DeGregorio and in response he hit her in the face. Bridges states that to the extent plaintiff was unable to give her own written statement to him, the complaint and response memorandum do not indicate what she would have written or how it would have differed from DeGregorio's version of events, and do not demonstrate how this negated the existence of probable cause at the time of her arrest.

    2. *Arguable Probable Cause Existed for Plaintiff's Arrest*

Determining whether qualified immunity should apply involves a two-step inquiry. First, the court must determine whether a constitutional right has been violated. <u>Ross v. City of Jackson, Missouri</u>, 897 F.3d 916, 920 (8th Cir. 2018) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). Then, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." <u>Id.</u>

Under the Fourth Amendment, a person has a right "to be secure in [her] person[]" and warrants may not issue "but upon probable cause." U.S. Const. amend. IV. "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." <u>Joseph v. Allen</u>, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoted case omitted).

A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is "arguable probable cause."

Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)).  Probable cause exists for a warrantless arrest "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'"  Id. at 523 (quoting Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010)).  Arguable probable cause exists if a person's arrest "was based on an objectively reasonable–even if mistaken–belief that the arrest was based in probable cause."  Ulrich v. Pope Cty., 715 F.3d 1054, 1059 (8th Cir. 2013); see Anderson v. Creighton, 483 U.S. 635, 641 (1987).  Stated another way, "If an officer arrests a suspect under the mistaken belief that there is probable cause, arguable probable cause exists if the mistake is 'objectively reasonable.'"  Gilmore v. City of Minneapolis, 837 F.3d 827, 932 (8th Cir. 2016) (quoted case and internal quotation marks omitted).

This standard provides "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)).  Under this standard, defendant Bridges is entitled to qualified immunity if a reasonable officer in his place would have reasonably believed based on objective facts, even if mistaken, that plaintiff violated the Missouri third-degree assault statute by attacking DeGregorio.  See Thurairajah v. Cross, 925 F.3d 979, 983 (8th Cir. 2019).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)).

The Court first examines the state statute on which plaintiff's arrest was based.  See id. at 474-78.  Plaintiff was arrested pursuant to Missouri Revised Statutes § 565.074.1(1) (2010), under which a person commits third-degree domestic assault if "[t]he person attempts to cause or

10

recklessly causes physical injury to [a] family or household member[.]"  United States v. Brown, 730 F. App'x 402, 403 (8th Cir. 2018) (unpublished per curiam).  "Physical injury" is defined by § 556.061(20), Mo. Rev. Stat. (2010), as "physical pain, illness, or any impairment of physical condition[.]"  "Missouri courts have consistently held that this requirement can be met by a relatively minimal showing."  Johnson v. United States, No. 17-5753, 2019 WL 3779366, at *3, __ F. App'x __ (6th Cir. Aug. 12, 2019) (unpublished per curiam).  The statutory definition "does not require that physical injury be substantial, merely that it be present."  State v. Barnes, 980 S.W.2d 314, 318-19 (Mo. Ct. App. 1998).  For example, in State v. Wells, the Missouri Court of Appeals held the element of physical injury was satisfied in a third-degree assault case where a female victim first said "that she was not hurt when she was pushed to the floor," but later answered "'Yeah'" when "she was asked if it hurt when she hit the floor."  754 S.W.2d 590, 592 (Mo. Ct. App. 1988).  The Missouri Court of Appeals found it was sufficient to prove the defendant had caused physical injury within the meaning of § 556.061(20) "when the victim summarized her injuries as '[j]ust a few aches and pains.'"  State v. Cole, 148 S.W.3d 896, 901 (Mo. Ct. App. 2004) (quoting Barnes, 980 S.W.2d at 319); see also State v. Fraga, 189 S.W.3d 585, 589 (Mo. Ct. App. 2006) (sufficient physical injury existed under § 556.061(20) where victim did not require medical attention but testified her neck and back ached as a result of a collision caused by defendant).

The "determination of whether arguable probable cause exists is informed by [the] assessment of what information the officer knew at the time that he made the probable cause determination, and what 'a reasonably thorough investigation' would have uncovered about the likelihood that a crime had been committed."  Ross, 897 F.3d at 921 (quoting Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999)).  "An officer need not conduct a mini-trial before making an

arrest," but it cannot be said that even arguable probable cause is present where "a minimal further investigation would have exonerated the suspect."  Id.

Here, considering the totality of the circumstances, the Court concludes it was objectively reasonable for defendant Bridges to mistakenly believe that probable cause existed to arrest plaintiff for third-degree domestic assault, and therefore arguable probable caused existed for the arrest.  The Court's analysis starts with the scene to which Bridges responded.  See Johnson v. City of Minneapolis, 901 F.3d 963, 968 (8th Cir. 2018).  Plaintiff's then-husband DeGregorio called 911 and reported that plaintiff had attacked him and was "intoxicated, drunk, and belligerent." (Complaint ¶ 15.)  Bridges arrived at the house in response to the call and was met by DeGregorio, who was downstairs and told Bridges that he and plaintiff had a verbal argument about taking out the trash after she came home, they exchanged harsh words, and he decided to leave for the night.  DeGregorio stated that plaintiff then began to push him and he felt threatened. He went to Walmart and while he was there plaintiff called him to discuss what had happened. DeGregorio returned home intending to go to bed but he and plaintiff again exchanged harsh words and he went upstairs to gather clothes and a bag to leave.  He stated that plaintiff grabbed his bag as he was leaving the room and would not let go.  DeGregorio stated he went back into the bedroom to get his keys and plaintiff tackled him onto the bed.  DeGregorio stated he then held plaintiff down and yelled at her to stop, but when he began to let go, plaintiff grabbed his face and began to kick him in the chest.  DeGregorio stated he yelled, "Get off of me" at plaintiff several times, meaning for her to stop trying to hurt him.  DeGregorio stated that when plaintiff grabbed his face again, he hit her in the face with his elbow and continued to hold her down until she stopped trying to hurt her.  Bridges noted that both of DeGregorio's cheeks were red.

Bridges then went upstairs and met with plaintiff, who was laying on the bed in the bedroom, which was in disarray.  Bridges observed that plaintiff was in a confused state and said

she didn't feel very good. Plaintiff told Bridges she had gone to dinner with her mother and drank two glasses of wine, and said she arrived home around 8:00 to 8:30 p.m. and began to have a verbal argument with DeGregorio. Plaintiff told Bridges she didn't remember what the argument was about or what happened, but only recalled arguing, fighting in the bedroom, and DeGregorio hitting her in the face.

Thus, at the time he arrested plaintiff, Bridges knew based on statements from DeGregorio and plaintiff that they had been in a verbal argument that escalated into physical contact, and based on statements by DeGregorio--which plaintiff was unable to refute because she could not remember--that plaintiff "grabbed [DeGregorio's] face and began to kick him in the chest" (Doc. 49-1 at 4), and DeGregorio desired that she "stop trying to hurt him." (Id.) Because there was evidence plaintiff was "trying to hurt" DeGregorio by kicking him, it was objectively reasonable for Bridges to conclude that plaintiff attempted to cause DeGregorio physical pain, which comes within § 565.074.1(1)'s definition of third-degree domestic assault as interpreted by Missouri courts. Bridges observed that both of DeGregorio's cheeks were red, which offered some objective evidence to support DeGregorio's assertions that plaintiff grabbed his face and was the aggressor. (Doc. 49-1 at 4). That plaintiff was laying on the bed, looked confused, admitted she had two drinks, and was unable to recall any information about the incident other than "arguing, fighting in the bedroom, and [DeGregorio] hitting her in the face," was evidence that could reasonably support DeGregorio's claim she was intoxicated and had attacked him. Further, the fact that DeGregorio admitted hitting plaintiff in the face with his elbow but claimed he did so only while struggling to fend off plaintiff's attack was also evidence from which Bridges could reasonably conclude plaintiff was the perpetrator and not the victim, particularly in the absence of contradictory statements by plaintiff.

Plaintiff's argument that Bridges' motion to dismiss improperly relies on facts as stated in the police report and fails to view the facts in the light most favorable to her lacks merit. First, by attaching the police report to her complaint as an exhibit and expressly incorporating it, plaintiff made the report part of the complaint. It is therefore properly considered in connection with the motion to dismiss. See Brown v. Green Tree Servicing LLC, 820 F.3d 371, 373 (8th Cir. 2016) (in reviewing amended complaint, it was proper for court to consider documents attached to it) (citing Great Plains Trust Co. v. Union Pac. R.R., 492 F.3d 986, 990 (8th Cir. 2007); and Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")); see also Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleading" and "include documents whose contents are alleged in a complaint and whose authenticity no party questions" (internal quotations omitted)). Plaintiff cannot attach the police report to her complaint, expressly incorporate it therein "as if fully referenced," cite to it and rely on its contents, and then ask that the Court not consider it.

Second, the Court considers the facts alleged in the complaint and attached police report in the light most favorable to plaintiff and assumes for purposes of the motion to dismiss that plaintiff was the victim of domestic assault by DeGregorio and that he falsely cast her as the perpetrator by calling 911, claiming she attacked him, and describing her as intoxicated and belligerent. Plaintiff contends the police report fails to include her statement and the facts alleged in her complaint, Response at 4, but the Court considers the facts as alleged in the complaint. There is no separate statement offered by plaintiff. The complaint contains relatively few facts concerning the actual incident between plaintiff and DeGregorio. It alleges plaintiff came home after dinner with her mother and was "physically assaulted by her then-husband, Charles DeGregorio, during a domestic dispute" (complaint ¶ 12); plaintiff suffered injuries from the

assault including a concussion, bruising to her face and body, and a black eye (id. ¶ 13); and DeGregorio "had no injuries, only 'redness in both cheeks' from the altercation" (id. ¶¶ 14, 17). To the extent there is overlap between the complaint's allegations and the narrative description in the police report, these are largely consistent. The police report states that plaintiff came home from dinner with her mother and she and DeGregorio argued verbally and then physically. Although the report concludes plaintiff was the aggressor it states that DeGregorio struck plaintiff, his cheeks were red but he had no other injuries, and plaintiff was confused and had a bruise below her left eye. It states that plaintiff said she had two drinks at dinner and noted "alcohol" as an observation about her.

Plaintiff's contention is that a reasonable police officer should have realized she was the victim of assault, not the perpetrator. Arguing for the absence of probable cause, plaintiff points to the "overwhelming physical evidence" of her bruises and black eye, Response at 7, DeGregorio's admission to Bridges that he hit her in the face and his lack of visible injuries, Bridges' failure to take her statement at the scene, Bridges' observation that plaintiff was laying down on the bed in a "confused state," and the fact that Bridges checked the "alcohol" box under "Conditions observed" but failed to administer a sobriety test.[4] Plaintiff argues Bridges failed to conduct a reasonably thorough investigation prior to arresting her and ignored exculpatory evidence that plaintiff had not committed third-degree assault, specifically the statements of plaintiff and DeGregorio that he struck her in the face, citing Kuehl, 173 F.3d 646.

In Kuehl, the Eighth Circuit held that "an officer who did not witness a crime did not have arguable probable cause to arrest a suspect after speaking with her only for 'twenty seconds' when

---

[4]Plaintiff asserts in her opposition memorandum that by "Bridges' own account and description [she] was suffering from a concussion." Pl.'s Response at 5. Later in the opposition, however, plaintiff states, "Defendant Bridges, *likely unbeknownst to him at the time*, even described Plaintiff's symptoms of her later-confirmed concussion and indicated the bruising below her left eye." Id. at 6 (emphasis added).

other eyewitnesses were present and would have exonerated her." Johnson v. City of Minneapolis, 901 F.3d 963, 971 (8th Cir. 2018) (citing Kuehl, 173 F.3d at 648). Unlike the situation in Kuehl, here there were no witnesses to the incident that Bridges could have interviewed apart from plaintiff and DeGregorio. Although plaintiff complains that Bridges did not take her written statement, she made oral statements to Bridges that he incorporated in the police report. Plaintiff does not dispute those statements, nor does she allege what her written statement would have been if Bridges had taken it.

"When deciding whether to arrest a subject, '[o]fficers may 'rely on the veracity of information supplied by the victim of a crime.'" Borgman, 646 F.3d at 523 (quoting Fisher, 619 F.3d at 817); see also Kuehl, 173 F.3d at 650 ("[A]n officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime[.]"). "In considering information given by a victim of a crime, an officer need not conduct a 'mini-trial' before effectuating an arrest although he cannot avoid 'minimal further investigation' if it would have exonerated the suspect." Borgman, 646 F.3d at 523 (quoting Kuehl, 173 F.3d at 650). The Eighth Circuit has often stated that "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence[.]" Kuehl, 173 F.3d at 650. However, "When an officer is faced with conflicting information that cannot be immediately resolved . . . he may have arguable probable cause to arrest a suspect." Borgman, 646 F.3d at 523 (citing Amrine v. Brooks, 522 F.3d 823, 832-33 (8th Cir. 2008)).

In the context of an officer's failure to adequately investigate, the Eighth Circuit has instructed that "the paradigmatic case where arguable probable cause would not be found is where an officer '[1] had spoken with the suspect for only twenty seconds, [2] ignored exculpatory evidence, and [3] disregarded an eyewitness account.'" Johnson, 901 F.3d at 971 (quoting Borgman, 646 F.3d at 523, and citing Clayborn v. Struebing, 734 F.3d 807, 810 (8th Cir. 2013)

(officers cannot "disregard plainly exculpatory evidence" and "ignore[] the only witness to the entire altercation" (internal quotation marks omitted)).

Here, plaintiff does not allege facts to show that Bridges failed to speak with her, did not speak with her long enough, or disregarded her account. Plaintiff also does not allege facts as to what further investigation by Bridges would have revealed. Plaintiff argues Bridges ignored exculpatory evidence–her bruising and black eye–but this evidence is included in the police report along with the fact that DeGregorio struck plaintiff in the face and his explanation of why he did so. The substance of plaintiff's argument is that Bridges failed to *correctly interpret* the evidence of her bruises and black eye, not that he ignored it; that he should not have believed DeGregorio's statements, and that by believing DeGregorio he failed to correctly determine that plaintiff was the victim rather than the perpetrator. But Bridges was entitled to rely on the veracity of DeGregorio's statements, Borgman, 646 F.3d at 523, he did not disregard plainly exculpatory evidence, plaintiff does not allege what further investigation by Bridges would have revealed, and "an officer . . . faced with conflicting information that cannot be immediately resolved . . . may have arguable probable cause to arrest a suspect." Id. That Bridges mistakenly believed plaintiff was the aggressor is not a violation of plaintiff's constitutional rights under the circumstances of this case.

Having considered the totality of the circumstances, the Court cannot conclude under the applicable standard that by arresting plaintiff for Missouri third-degree assault Bridges was either plainly incompetent or that he knowingly violated the law. See Hunter, 502 U.S. at 229. Bridges' arrest of plaintiff under the mistaken belief that probable cause existed was objectively reasonable, and therefore arguable probable cause exists. See Gilmore, 837 F.3d at 932. Plaintiff therefore does not allege a violation of her constitutional rights, and Bridges is entitled to qualified immunity on this claim.

B.  Count I – Excessive Force – Defendant Bridges

Bridges moves for dismissal on the basis of qualified immunity plaintiff's secondary claim in Count I that he used excess force in violation of the Fourth and Fourteenth Amendments by making her handcuffs too tight, resulting in bruising and tissue damage.  Plaintiff does not respond to this argument.  Assuming plaintiff does not waive the claim by her failure to respond, Bridges is entitled to qualified immunity.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers."  Thompson v. City of Monticello, Ark., 894 F.3d 993, 998 (8th Cir. 2008).  However, "[p]olice officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency."  Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) (citation omitted).

The Court concludes defendant Bridges is entitled to qualified immunity because it is not clearly established that the amount of force he used against plaintiff in handcuffing her is excessive.  Although the Eighth Circuit has stated generally that "the use of force against a suspect who was not threatening and not resisting may be unlawful," Shannon v. Koehler, 616 F.3d 855, 864 (8th Cir. 2010), it has also explained that this proposition does not resolve whether a particular use of force is de minimis and therefore insufficient to support a claim.  Robinson v. Hawkins, No. 18-1823, 2019 WL 4196347, at *4, __ F.3d __ (8th Cir. Sept. 5, 2019).  For example, in Crumley v. City of St. Paul, 324 F.3d 1003, 1006-08 (8th Cir. 2003), a police officer "did not violate a suspect's clearly established rights when he 'struck or pushed [the suspect] approximately five times and then spun her around and handcuffed her,' and where the suspect suffered bleeding wrists as a result of being handcuffed."  Robinson, 2019 WL 4196347, at *4-5.  In Robinson, the plaintiff was shoved up against a trailer and handcuffed by a police officer and

she sustained "fairly minor" injuries as a result of the force used, including some pain and bleeding from the wrists as a result of being handcuffed and pain in her shoulders from being pushed against the trailer. Id. at *5. The Eighth Circuit concluded the officer was entitled to qualified immunity because it was not clearly established that the amount of force she used was excessive. Id.

The Robinson case controls plaintiff's allegation here that she was subjected to excess force because Bridges handcuffed her wrists too tightly and she sustained bruising as a result. Defendant Bridges is entitled to qualified immunity because it is not clearly established that the amount of force he used against plaintiff was excessive. Id.; see also Husain v. Missouri, 2019 WL 330874, at *4 (E.D. Mo. Jan. 25, 2019) (dismissing claim of excess force regarding use of handcuffs for failure to state a claim).

C. Counts II and III – Failure to Provide Medical Care – Defendants Bridges and Cash

1. *Defendant Bridges is Entitled to Qualified Immunity*

Bridges moves to dismiss on the basis of qualified immunity plaintiff's claim in Count II that he violated her Fourteenth Amendment rights by refusing to obtain medical attention for her serious medical needs. The complaint alleges plaintiff sustained serious injuries as a result of DeGregorio's assault, specifically a concussion, bruising to her face and body, and a black eye. Complaint ¶ 13. All of these injuries "were visible at the time of contact with the Jefferson County Sheriff's Department," id. ¶¶ 13, 17, defendant Bridges reported plaintiff was in a "confused state," id. ¶ 17, and he knew DeGregorio had hit her in the face. Doc. 49-1 at 2, 4. The Event Chronology log shows the comment "Female Needs EMS" at 9:55 p.m., but then "Disregard EMS" at 10:15 p.m. Doc. 49-2 at 1-2. Plaintiff made "multiple requests for medical attention" at the scene, Complaint ¶ 21, and "repeatedly requested medical assistance" from Bridges during the transport to jail. Id. ¶ 28. In Count II, plaintiff alleges that based on these facts, the seriousness of

her injuries should have been obvious to a trained peace officer, and defendant Bridges violated her constitutional rights by not obtaining medical care for injuries to her head prior to taking her to jail.

As an arrestee, plaintiff's constitutional claims based on failure to provide medical care arise under the due process clause of the Fourteenth Amendment, but the Eighth Circuit holds that the Eighth Amendment's deliberate indifference standard applies to the claims of arrestees. Hanson ex rel. Layton v. Best, 915 F.3d 543, 548 (8th Cir. 2019) (citing Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012)). Under the Eighth Amendment, a prisoner plaintiff seeking relief for claims relating to medical care must allege that a defendant prison official was deliberately indifferent to the plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). Further, a plaintiff must allege she had objectively serious medical needs, and the defendant officer actually knew of but deliberately disregarded those needs. Hartsfield v. Colburn, 491 F.3d 394, 396-97 (8th Cir. 2007); Johnson v. Hamilton, 452 F.3d 967, 972-73 (8th Cir. 2006). "[S]ociety does not expect that prisoners will have unqualified access to health care." Hudson v. McMillian, 503 U.S. 1, 9. Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Id. (citing Estelle, 429 U.S. at 103-04).

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minnesota Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoted case omitted). For the second element, "[T]o demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Thompson v. King, 730 F.3d 742, 746-47 (8th Cir. 2013) (quoted case omitted). "This onerous standard

requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" <u>Id.</u> (internal quotations and citations omitted).

As the Eighth Circuit has explained,

"'To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk.' Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it." <u>Vaughn v. Greene County, Ark.</u>, 438 F.3d 845, 850 (8th Cir. 2006), quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. <u>See</u> <u>Farmer</u>, 511 U.S. at 842. If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may held liable for deliberate indifference. <u>See</u> <u>id.</u> at 847. "However, '[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions.' <u>Pietrafeso v. Lawrence County, S.D.</u>, 452 F.3d 978, 983 (8th Cir. 2006), quoting <u>Gibson v. Weber</u>, 433 F.3d 642, 646 (8th Cir. 2006)."

<u>Jones</u>, 512 F.3d at 481-82. "Government officials are entitled to qualified immunity for discretionary decisions unless they violate a clearly established constitutional right." <u>Id.</u> at 484. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." <u>Id.</u>

Here, the complaint alleges plaintiff had a concussion, visible bruising on her face and body, and Bridges noted she was confused. At the time Bridges responded to DeGregorio's 911 call, plaintiff's condition had not been diagnosed by a physician as requiring treatment. As a result, she must allege facts from which it may be plausibly inferred that her condition was so obvious a layperson would easily recognize the need for treatment. <u>See</u> <u>Jones</u>, 512 F.3d at 482. The complaint's allegations, viewed in the light most favorable to plaintiff, are insufficient to support such a plausible inference. It would not be obvious to a layperson that plaintiff needed immediate medical treatment because she had a bruise below her eye and was confused, even

though Bridges knew she had been struck in the face and plaintiff repeatedly requested unspecified medical assistance.[5]

Whether an objectively serious medical need exists is based on the attendant circumstances, regardless of what the officer believes the cause to be. Barton v. Tabor, 820 Fl3d 958, 965 (8th Cir. 2016). Assuming for purposes of this opinion that a concussion is a serious injury,[6] it is not an obvious injury such that a layperson would necessarily recognize the need for immediate medical attention. See, e.g., Carpenter, 686 F.3d at 650-51 (need for medical treatment not obvious despite officer being told plaintiff was suffering a stroke); see also Grayson v. Ross, 454 F.3d 802 (8th Cir. 2006) (arresting officer entitled to qualified immunity on claim he failed to take arrestee for medical treatment; no objectively serious medical need existed because it would not have been obvious to a layperson that arrestee required immediate medical attention even though his drug intoxication resulted in death and the officer had hit the arrestee in the head with his service weapon);[7] cf. Barton, 820 F.3d at 965 (complaint stated a facially plausible claim against officer who failed to obtain medical treatment for arrestee he transported to jail where it alleged officer knew plaintiff showed the following signs of a serious medical need: plaintiff fell down and became unconscious at the scene of a vehicle accident, another officer checked

---

[5]The complaint's allegations also reveal it is plausible that Bridges believed plaintiff's confusion was due to intoxication, as plaintiff alleges DeGregorio told the 911 operator and Bridges that she was intoxicated, complaint ¶ 15; and that plaintiff was conscious, able to speak with Bridges, and admitted drinking two glasses of wine at dinner but could not remember much of the incident. Doc. 49-1 at 4.

[6]See, e.g., Daugherty v. Armstrong, 2012 WL 3930325, at *2 (D. Neb. Sept. 7, 2012) (arrestee's Fourteenth Amendment claim asserting failure to provide medical care for alleged concussion survived frivolity review under 28 U.S.C. § 1915(d)) (citing Harris v. Nielsen, 2010 WL 2521434, at *7 (D.N.J. June 15, 2010) (assuming without deciding that plaintiff's potential concussion constituted a serious medical need sufficient to satisfy the objective element of an Eighth Amendment claim)).

[7]In Grayson, the jailer initially refused to accept the arrestee and the arresting officer complained that taking him to the hospital would "take a lot of time." 454 F.3d at 806. The Eighth Circuit found the arresting officer's "admittedly callous remark" to the jailer about the amount of time involved in taking the man to the hospital was not a violation of his constitutional rights. Id. at 809, n.1.

plaintiff's pulse because he was not responsive, plaintiff could not stand or walk on his own, could not answer questions, and fell off the bench onto the floor at the detention center); Pool v. Sebastian County, Ark., 418 F.3d 934, 945 (8th Cir. 2005) (serious medical need was obvious where inmate was pregnant, bleeding, and passing blood clots).

Here, the complaint viewed in the light most favorable to plaintiff does not allege sufficient facts to plausibly show it was obvious to a layperson that plaintiff required immediate medical attention at the time Bridges transported her to jail. Therefore the complaint does not adequately allege plaintiff had an "objectively serious medical need." It also does not allege sufficient facts to plausibly show that Bridges subjectively knew plaintiff required medical attention such that he acted with a mental state akin to criminal recklessness in disregarding a known risk to her health. Thus, it does not adequately allege that Bridges was deliberately indifferent to her medical needs. Accordingly, the complaint does not allege a constitutional violation in Count II, and defendant Bridges is entitled to qualified immunity on the claim.

Because the Court finds plaintiff did not allege a constitutional violation by Bridges in Count II, her allegation that Bridges violated Sheriff's Office policies and procedures by failing to obtain medical care before transporting her to the jail does not compel a different result. An officer's failure to comply with internal policies and procedures does not by itself rise to the level of a constitutional violation. See Walton v. Dawson, 752 F.3d 1109, 1122 (8th Cir. 2014).

### 2. *Defendant Cash is Entitled to Qualified Immunity*

In Count III, plaintiff alleges that defendant correctional officer Tenesa Cash violated her Fourteenth Amendment rights and failed to follow jail written policy when she did not require Bridges to take plaintiff for medical care and refuse to admit her to the jail, when she ignored plaintiff's repeated requests for medical attention after plaintiff was admitted to the jail, and when she taunted plaintiff by asking if she could afford a doctor.

In Fourte v. Faulkner County, Arkansas, 746 F.3d 384, 388 (8th Cir. 2014), the Eighth Circuit stated that jail "[a]dmittees have the same right as inmates: not to have known, objectively serious medical needs disregarded. See Krout v. Goemmer, 583 F.3d 557, 568-69 (8th Cir. 2009) (applying deliberate indifference standard to arrival at detention center); McRaven v. Sanders, 577 F.3d 974, 978-79 (8th Cir. 2009) (applying deliberate indifference standard and denying qualified immunity when officials ignored admittee's slurred speech, poor coordination, and admission of substance abuse)." In Fourte, the plaintiff claimed jail personnel disregarded his serious medical need of high blood pressure and alleged his "lazy eye," "sweating," and difficulty "getting around" were recognizable signs of a serious medical need. 746 F.3d at 388. The Eighth Circuit disagreed, finding these were "less obvious signs of a serious medical condition" than in cases where objectively serious medical needs were found, citing McRaven, 577 F.3d at 978-79; Nelson v. Correctional Med. Servs., 583 F.3d 522, 529 (8th Cir. 2009) (en banc) (shackling a woman in labor); Gordon v. Frank, 454 F.3d 858, 864 (8th Cir. 2006) ("shortness of breath and chest pain" when on high observation); Pool, 418 F.3d at 944-45 (pregnant inmate bled, passed blood clots, and had difficulty eating and showering).

As discussed above, the complaint viewed in the light most favorable to plaintiff does not allege sufficient facts to plausibly show it was obvious to a layperson that plaintiff required immediate medical attention at the time she arrived at the jail. Therefore, the complaint does not adequately allege plaintiff had an "objectively serious medical need" that Cash disregarded by not directing Bridges to take her for medical care and by admitting her into the jail. For the same reason, the complaint does not allege sufficient facts to plausibly show that Cash subjectively knew plaintiff required medical attention at the time she was admitted to the jail such that Cash acted with a mental state akin to criminal recklessness in disregarding a known risk to plaintiff's health.

The complaint also alleges plaintiff made repeated requests for medical attention while in the jail but no jail personnel called for the facility nurse or took steps to provide her with medical assistance. Complaint ¶ 36. This allegation is not specifically directed against Cash. Plaintiff alleges that "despite her repeated requests" using the in-cell intercom and during her night in custody had severe headaches, vertigo, nausea, and disorientation. Complaint ¶¶ 37-38. Plaintiff alleges that when Cash responded to one of her intercom calls plaintiff requested medical attention and "advised that she may have a concussion from Mr. DeGregorio's assault on her," but Cash only responded, "Can you even afford to see a doctor?" and thereafter failed to respond. Id. ¶ 40.

The complaint does not allege facts that plausibly show plaintiff had an objectively serious medical need while in the jail. For example, plaintiff does not allege that she told Cash of her severe headaches, vertigo, nausea, and disorientation and instead alleges only that plaintiff told Cash she "may have a concussion." Complaint ¶ 40. The complaint also does not plausibly allege facts to show that Cash was deliberately indifferent to plaintiff's medical needs in that she was subjectively aware of plaintiff's serious medical need and acted with a mental state akin to criminal recklessness in disregarding it. Cash's response to plaintiff's request for medical treatment was callous and unprofessional, but the remark alone is not a constitutional violation. See Grayson, 454 F.3d at 809, n.1.

Plaintiff therefore does not allege a constitutional violation and defendant Cash is entitled to qualified immunity on the claim in Count III. Because the Court finds plaintiff did not allege a constitutional violation by Cash, the allegations that Cash violated Sheriff's Office policies and procedures by failing to require Bridges to transport plaintiff for medical care before admitting her to the jail, and by failing to call the jail nurse or to have plaintiff transported to a medical facility in response to her requests for medical treatment, do not compel a different result. Failure to

comply with internal policies and procedures does not by itself rise to the level of a constitutional violation. See Walton, 752 F.3d at 1122.

D. Count IV – Monell Claims against Defendant Jefferson County

In Count IV, plaintiff alleges that Jefferson County is liable to her under § 1983 for the other defendants' constitutional violations because the violations were caused by a policy, practice, or custom of the Jefferson County Sheriff's Office as follows: (1) "deputies routinely arrest female victims of domestic violence when 9-1-1 calls are placed by male perpetrators claiming to be victims;" (2) "deputies routinely fail to properly identify victims of domestic violence and often identify callers as victims, even in the absence of evidence substantiating as such;" and (3) the Sheriff's Office "has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting seizures and arresting victims of domestic violence without probable cause to do so." Complaint ¶ 76.a.-c. The complaint also alleges Jefferson County "has inadequately trained, supervised, and disciplined" Sheriff's Office "deputies with respect to its deputies' failure to identify victims and suspects, unreasonable seizures and arrests of victims, and use of force." Id. ¶ 77. Jefferson County moves to dismiss plaintiff's claims against it in Count IV on the basis that she fails to state a claim because she never suffered a constitutional violation.

Plaintiff's § 1983 claims against Jefferson County are expressly based on the alleged violation of her constitutional rights by the individual defendants. The Court has found that plaintiff fails to allege a constitutional violation against either defendant Bridges or defendant Cash. See infra at §§ III.A.-C. Because plaintiff's claims against Jefferson County are dependent on her claims against the individual defendants, she cannot allege a prima facie case against the County and her claims against it must fail. Under Monell v. Department of Social Services, 436 U.S. 658, 691 (1978), "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . an 'official municipal policy.'" Corwin v. City of

Independence, 829 F.3d 695, 699 (8th Cir. 2016) (quoting Monell, 436 U.S. at 691).  The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."  McCoy v. City of Monticello, 411 F.3d 902, 922-23 (8th Cir. 2005).  It follows that absent allegations of a constitutional violation by a Jefferson County employee plaintiff cannot successfully assert a claim of § 1983 or Monell liability against the County.  See Veneklase v. City of Fargo, 248 F.3d 738, 748 (8th Cir. 2001) (en banc) (declaring "where arresting police officers are absolved of liability to arrestees, the City ordinarily is not liable"); see also Whitney v. City of St. Louis, Mo., 887 F.3d 857, 860-61 (8th Cir. 2018) (citing Malone v. Hinman, 847 F.3d 949, 955 (8th Cir. 2017) ("Because we conclude that Officer Hinman did not violate Malone's constitutional rights, there can be no § 1983 or Monell liability on the part of Chief Thomas and the City."); Sitzes v. City of W. Memphis, Ark., 606 F.3d 461, 470 (8th Cir. 2010) (plaintiffs' claims "could not be sustained absent an underlying constitutional violation by the officer"); Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or Monell . . . municipal liability.")).  Defendant Jefferson County's motion to dismiss should therefore be granted.

E.  State Law Claims

The defendants also move to dismiss plaintiff's state law claims for false arrest against defendant Bridges in Count V and false imprisonment against all of the defendants in Count VI.[8]

No federal claims remain in this action.  It is within this Court's discretionary authority to decline to exercise supplemental jurisdiction over state law claims once it has dismissed "all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see Hillesheim v. Holiday

---

[8]Count VI is the only claim asserted against defendant Oliver Boyer.

Stationstores, Inc., 903 F.3d 786, 792-93 (8th Cir. 2018); see generally Brown v. Mortgage Elec. Registration Sys., Inc., 738 F.3d 926, 933 (8th Cir. 2013) ("In exercising its discretion, the district court should consider factors such as judicial economy, convenience, fairness, and comity."). The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues whenever possible" and the "necessity to provide great deference and comity to state court forums to decide issues involving state law questions." Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990). This case is in its early stages, no case management order has been issued, and little or no discovery has taken place. The Court concludes that factors of judicial economy and deference to state court forums weigh against its exercise of supplemental jurisdiction over plaintiff's state law claims in this case, and it will decline to exercise supplemental jurisdiction. Defendants' motion to dismiss the state law claims will be denied as moot without prejudice to being refiled in any future state court action by plaintiff.

**IV**. **Conclusion**

For the foregoing reasons, the Court finds that defendants Bridges and Cash are entitled to qualified immunity on plaintiff's § 1983 claims against them in Counts I, II, and III, as plaintiff has failed to allege a constitutional violation by either defendant. Defendant Jefferson County's motion to dismiss the Monell claims against it in Count IV will be granted because these are dependent upon plaintiff's claims against Bridges and Cash, and in the absence of allegations of a constitution violation by the individual defendants there can be no liability on Jefferson County's part. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims of false arrest and false imprisonment in Count V and VI.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is **GRANTED** as to the claims under 42 U.S.C. § 1983 asserted in Counts I, II, III, and

IV of the Third Amended Complaint, and **DENIED** as moot without prejudice as to the supplemental state law claims in Counts V and VI. [Doc. 53]

   **IT IS FURTHER ORDERED** that plaintiff's state law claims in Counts V and VI of the Third Amended Complaint are **DISMISSED without prejudice**.

   An appropriate order of dismissal will accompany this Memorandum and Order.

                      _____
                       **CHARLES A. SHAW**
                       **UNITED STATES DISTRICT JUDGE**

Dated this  2nd  day of October, 2019.